UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| DANNY XITUMUL JERONIMO,<br><br>Petitioner,<br>v.<br><br>BRUCE SCOTT et al.,<br><br>Respondents. | CASE NO. 2:26-cv-00893-LK<br><br>ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS |

This matter comes before the Court on the Petitioner Danny Xitumul Jeronimo's amended petition for a writ of habeas corpus. Dkt. No. 15. For the reasons set forth below, the Court denies the petition.[1]

## I. BACKGROUND

Xitumul Jeronimo is a native and citizen of Guatemala. Dkt. No. 8 at 2. On May 16, 2014, he "was admitted to the United Sates as a nonimmigrant visitor with authorization to remain for a temporary period until September 15, 2014," but he did not depart by that date. *Id.*

[1] The Court declines to hold an evidentiary hearing because the record is sufficient for adjudication of the petition. *See Owino v. Napolitano*, 575 F.3d 952, 954 (9th Cir. 2009).

A series of encounters with law enforcement followed. On or about April 19, 2020, Xitumul Jeronimo was "encountered at the Palm Beach County Jail pending local charges of Battery," and although a detainer was lodged, he was released on an Order of Release on Recognizance ("OREC") due to the Covid-19 pandemic. *Id.* Xitumul Jeronimo was "served with OREC documents and instructed to report to the ICE office in Miramar, FL on August 20, 2020." *Id.* The next day, he was issued a Notice to Appear ("NTA") charging him as removable pursuant to section 237(a)(1)(B) of the Immigration and Nationality Act ("INA"), because he remained in the United States for a time longer than permitted. *Id.* In September 2020, the criminal case against him was "dropped," and the NTA was cancelled in April 2021. *Id.*

In September 2024, Xitumul Jeronimo was "encountered at Palm Beach County Jail subsequent to an arrest for Felony Battery-Domestic Strangulation and Possession of Cocaine." *Id.* Those charges were subsequently dismissed. *Id.* On March 15, 2025, Xitumul Jeronimo was arrested by the Ft. Lauderdale Police Department in Florida for two counts of "Domestic Battery by Strangulation, Aggravated Battery-Cause Bodily Harm or Disability, Touch or Strike/Battery." *Id.* at 3. The next day, "a new NTA was issued, again charging [him] as removable pursuant to INA § 237(a)(1)(B)." *Id.*; *see also* Dkt. No. 9-1 at 2. U.S. Immigration and Customs Enforcement ("ICE") took Xitumul Jeronimo into custody on May 7, 2025, in Miami, Florida, and transferred him to the Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington on June 1, 2025. Dkt. No. 8 at 3. Xitumul Jeronimo appeared in immigration court in July 2025, and he filed an application for cancellation of removal. *Id.* On October 20, 2025, Xitumul Jeronimo's applications for relief were denied, and he was ordered removed to Guatemala. *Id.* at 4. He appealed that decision to the Board of Immigration Appeals ("BIA"), and his appeal remains pending. *Id.*

On November 13, 2025, Xitumul Jeronimo requested a bond hearing, and on December 2, 2025, an immigration judge ("IJ") denied bond, finding him a danger to the community and a flight

risk. *Id.*; *see also* Dkt. No. 9-3 at 2–3. Xitumul Jeronimo did not appeal that decision. Dkt. No. 8 at 4.

Xitumul Jeronimo filed his petition for a writ of habeas corpus on March 13, 2026. Dkt. No. 1. Respondents[2] filed a return. Dkt. No. 7. The Court subsequently issued an order directing Xitumul Jeronimo to show cause "explaining why his current petition should not be dismissed without prejudice for failing to name a proper respondent or, in the alternative, file an amended petition that adds the warden as a respondent." Dkt. No. 10. Xitumul Jeronimo filed a traverse, Dkt. No. 11, that did not cure the deficiency, so the Court issued a second order to show cause, Dkt. No. 13. Xitumul Jeronimo next filed an amended petition naming the warden as a defendant. Dkt. No. 15. Neither party filed an amended return or traverse.

## II. DISCUSSION

Xitumul Jeronimo contends that his detention "is becoming Prolonged and Open-Ended," with an "unclear" end date. Dkt. No. 15 at 2. As such, "continued detention is no longer related to [a] regulatory purpose and becomes punitive." *Id.* He asserts that under these conditions, "[r]elease is appropriate[.]" *Id.*[3] Respondents argue that Xitumul Jeronimo has not shown that the Court should overturn the IJ's bond decision. Dkt. No. 7 at 1. They argue that Xitumul Jeronimo received a bond hearing, he failed to exhaust his administrative remedies to challenge the bond decision, and he "identifies no colorable constitutional violation or legal error arising from his custody determination." *Id.* at 6–7.

---

[2] Although Bruce Scott, the warden of the NWIPC, has not appeared in this case, (1) the purpose of naming the petitioner's custodian is to effectuate injunctive relief where appropriate, *see Rumsfeld v. Padilla*, 542 U.S. 426, 435 (2004) (the custodian has "the power to produce the body of [the petitioner] before the court or judge," such that "he may be liberated if no sufficient reason is shown to the contrary" (citation modified)); and (2) federal respondents often represent the warden's interests, as they do in this case, *see Doe v. Garland*, 109 F.4th 1188, 1196 (9th Cir. 2024) ("Even in cases where private contract wardens are named as respondents, the government can and has stepped in to defend its interest in keeping petitioners detained.").

[3] The allegations in the amended petition are consistent with those in the original petition. In his original petition, Xitumul Jeronimo contended that the length of his detention had become "completely excessive." Dkt. No. 3 at 6.

**A. Legal Standard**

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). Accordingly, a district court's habeas jurisdiction includes challenges to immigration detention. *See Zadvydas*, 533 U.S. at 687.

Under the Due Process Clause of the Fifth Amendment to the United States Constitution, no person shall be "deprived of life, liberty, or property, without due process of law[.]" U.S. Const. amend. V. "The Fifth Amendment guarantees due process in deportation proceedings." *Torres-Aguilar v. I.N.S.*, 246 F.3d 1267, 1270 (9th Cir. 2001). "[T]he Due Process Clause applies to all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693; *see also Demore v. Kim*, 538 U.S. 510, 523 (2003) (recognizing that Fifth Amendment due process protections extend to deportation proceedings, but noting that "detention during deportation proceedings [is] a constitutionally valid aspect of the deportation process").

**B. Xitumul Jeronimo Is Not Entitled to Relief**

1. Xitumul Jeronimo is Not Entitled to Relief Under *Zadvydas*

By arguing that his detention has become "prolonged" and "[o]pen-[e]nded" with an "unclear" release date, Dkt. No. 15 at 2, Xitumul Jeronimo seems to be arguing that his detention has become indefinite under *Zadvydas*. Respondents disagree. Dkt. No. 7 at 11–12.

The parties agree that Xitumul Jeronimo is detained under 8 U.S.C. § 1226(a), Dkt. No. 3 at 3; Dkt. No. 7 at 6, which allows the Attorney General to detain a noncitizen "pending a decision on whether the [noncitizen] is to be removed from the United States." *Prieto-Romero v. Clark*, 534 F.3d 1053, 1062 (9th Cir. 2008). True enough, "§ 1226(a), like § 1231(a)(6), also does not authorize indefinite detention." *Id.* at 1063. Accordingly, "[c]onsistent with *Zadvydas*, [the Ninth Circuit] construe[s] the Attorney General's detention authority under § 1226(a) as limited to the period reasonably necessary to bring about [a noncitizen's] removal from the United States, even if continued detention in any particular litigant's case would not pose a constitutional problem." *Id.* (citation modified). However, Xitumul Jeronimo does not provide "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future[.]" *Zadvydas*, 533 U.S. at 701. On that front, he does not argue that anything would prevent the government from removing him to Guatemala if his challenge to removal is unsuccessful, *Prieto-Romero*, 534 F.3d at 1064–65, or that he is in a "removable-but-unremovable limbo," *Jama v. Immigr. & Customs Enf't*, 543 U.S. 335, 347 (2005). Rather, his administrative proceedings will end at some point, even in the "absence of a date certain" as to when that will occur. *Castaneda v. Perry*, 95 F.4th 750, 758 (4th Cir. 2024); *see also Diouf v. Mukasey*, 542 F.3d 1222, 1233 (9th Cir. 2008) ("That the detention did not have a certain end date does not change the [*Zadvydas*] analysis."). Under these circumstances, Xitumul Jeronimo's "continued detention, while lengthy, is not indefinite," and detention "remains authorized by § 1226(a)[.]" *Prieto-Romero*, 534 F.3d at 1065.

**C. Xitumul Jeronimo has Not Shown Any Constitutional Infirmity Related to His Bond Denial**

Consistent with the procedures laid out in the implementing regulations for Section 1226(a), *see Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1196–97 (9th Cir. 2022) (citing 8 C.F.R. §§ 236.1(c)(8), -(d)(1), -(d)(3), 1003.19), Xitumul Jeronimo had a bond hearing in December 2025, Dkt. No. 8 at 4. His amended habeas petition does not challenge that bond decision, nor does he seek another bond hearing or assert that "circumstances have changed materially since the prior bond redetermination." 8 C.F.R. § 1003.19(e); *see generally* Dkt. No. 15.[4]

Even liberally construing the petition in light of Xitumul Jeronimo's pro se status, he does not show that he has been denied due process or is otherwise entitled to release or another bond hearing. The Court thus denies the petition. *See, e.g.*, *Martir-Martinez v. Scott*, No. 2:25-cv-02194-LK, 2026 WL 709787, at *4 (W.D. Wash. Mar. 13, 2026) (denying habeas petition when petitioner "has been afforded all the process he is due and does not otherwise point to other statutory grounds to grant immediate release" (citation modified)).

## III. CONCLUSION

For the foregoing reasons, the Court DENIES Xitumul Jeronimo's petition. If continued detention becomes unreasonably prolonged and indefinite, Xitumul Jeronimo may file another habeas petition at that time on that issue.

Dated this 14th day of August, 2026.

Lauren King
United States District Judge

[4] Xitumul Jeronimo's original petition was superseded by his amended petition. *Totskii v. Larose*, No. 26-cv-1053-JES-JLB, 2026 WL 586468, at *2 (S.D. Cal. Mar. 2, 2026) ("An amended petition supersedes and effectively replaces the prior petition."). Regardless, his original petition did not allege any infirmities with his bond hearing or decision either, instead setting forth what seems to be form language stating that "the Bond is either nonexistent or . . . the Bond is too high to afford and is unreasonable given the circumstances that the Respondent will appear for all future hearings." Dkt. No. 3 at 3.